IN THE UNITED STATES DISTRICT COURT

DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

        Plaintiff,

v.                                         CR No. 09-906 LH

MANUEL CORDOVA,

        Defendant.

<u>**MEMORANDUM OPINION AND ORDER**</u>

**THIS MATTER** comes before the Court on Defendant Manuel Cordova's Motion to Suppress [Doc. 32], filed October 5, 2009.  The Court, having considered the motion, the briefs of the parties, and the applicable law, and otherwise being fully advised, finds that the Motion shall be **denied**.

## I.  FACTUAL BACKGROUND

On March 3, 2009, Bernalillo County Sheriff's deputies executed a Search Warrant at a residence at 1409 Corfield SW in Albuquerque, New Mexico.  At that time, deputies arrested Defendant, who was leaving the residence in a blue Dodge truck.  Upon a search of Defendant's person, the deputies discovered 4.5 grams of heroin in his pants' pocket.

On April 9, 2009, a grand jury returned an indictment charging Defendant with possessing the heroin with intent to distribute it.  On October 5, 2009, Defendant filed a motion to suppress evidence against him, including the heroin and statements he made to deputies.  The search warrant for 1409 Corfield SW and the affidavit supporting the warrant were attached to Defendant's motion as Exhibit A.  Detective Luis Funes, a full-time salaried deputy of the

Bernalillo County Sheriff's Department, was the affiant who requested the warrant. A District Judge for the State of New Mexico, County of Bernalillo, issued the warrant, which authorized the search of the residence and other structures located at 1409 Corfield, of "any and all vehicles registered to person(s) living, staying, or occupying 1409 Corfield SW," as well as of Defendant, Manuel Cordova.

## II.  CONTENTS OF AFFIDAVIT

In support of his application for a search warrant, Detective Funes' affidavit contained the following information:

Detective Funes met with a confidential informant on or about February 16, 2009.  The informant indicated that he or she had purchased heroin from a man who lived at 3629 El Porvenir SW within the previous thirty days.  The informant also told Detective Funes that the man from whom he or she purchased the heroin went by the name of "Ash."

Sometime between February 20, 2009 and February 23, 2009, Detective Funes met with the informant for the purpose of arranging a controlled purchase of heroin from "Ash."  Prior to this transaction, Detective Funes searched the informant for narcotics and contraband and discovered none.  Detective Funes observed the informant enter the residence at 3629 Porvenir SW and remain inside for some period of time.  Meanwhile, a man driving a blue Dodge truck, license plate JRL085, pulled up to the residence.  Another man left the residence and approached the blue Dodge truck.  He gave the driver of the truck an unknown amount of money in exchange for an item, which he placed in his pocket before returning inside the residence.  The driver of the blue Dodge truck left 3629 El Porvenir SW, and deputies followed him in an unmarked vehicle to a residence at 1409 Corfield SW.

Approximately five minutes after Detective Funes observed the transaction between the

2

occupant of 3629 El Porvenir SW and the driver of the blue Dodge truck, the informant emerged from the residence.   The informant "proceeded directly" to a prearranged location, where he or she turned over an amount of heroin to Detective Funes.  The informant told Detective Funes that he or she had just purchased the heroin from "Ash."  Additionally, the informant reported that "the male who was in the Dodge pick up was 'Ash's' dealer and that 'Ash' had just purchased a quantity of Heroin from him."  Detective Funes searched the informant for a second time, again finding no contraband or narcotics.  The narcotic that the informant turned over tested positive for heroin.

According to Detective Funes, the informant had previously provided him with information regarding people involved in narcotics activities and people who have been arrested for narcotics activities.  In those cases, Detective Funes corroborated the information provided by the informant, and the informant had never given him information that proved to be false.

Additionally, on February 17, 2009, Detective Funes made contact with Luis Arzavalla during the execution of a search warrant at 3629 El Porvenir SW.  Mr. Arzavalla reported that the blue Dodge truck belonged to a person named "Manuel," and that he and his cousin, "Ash," had both purchased heroin from "Manuel" for approximately four months.

At some point, Detective Funes searched a law enforcement database and discovered that the blue Dodge truck, license plate JRL085, was registered to "Manual [sic] Cordova, with a Corfield address."  Detective Funes also discovered from searching law enforcement databases that Manuel Cordova had "a previous charge for Trafficking a Controlled Substance on May 5[th], 2002."

## III.  ANALYSIS

Defendant seeks suppression of evidence obtained in connection with the search of his residence at 1409 Corfield SW, the stop of his blue Dodge truck, and the search of his pants' pocket.  Arguing that Detective Funes' affidavit contained deliberate misrepresentations of fact, Defendant also requests an evidentiary hearing, pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978), to determine the veracity of the affidavit.  Accordingly, this Court considers, first, whether a *Franks* hearing is necessary.  *See infra,* Part III.A.  Determining that such a hearing is not required, the Court next reaches the issue of whether the fruit of the searches and seizure at issue  should otherwise be suppressed.

In his motion, Defendant articulates various bases for the suppression of the evidence beyond the alleged misrepresentations in the affidavit.  First, he argues that the search of his residence at 1409 Corfield SW was unlawful because there was insufficient indicium of reliability of the informant in the supporting affidavit and because the execution of the search warrant was unreasonable.  Second, Defendant argues that the stop of his blue Dodge truck was unlawful because it was not precipitated by a traffic violation and because the warrant did not authorize either the stop or the search of the truck.  Finally, Defendant contends that the search of his person was unlawful because he did not consent to such a search and because the officers did not have any alternate basis for searching his person.

### A.  *Franks* Hearing

#### i.  Deliberate or Reckless Misrepresentations or Omissions of Fact

Defendant urges this Court to suppress the evidence against him based on allegedly false statements or, more accurately, omissions in the affidavit in support of the search warrant.  Pursuant to *Franks*,

> where the defendant makes a substantial preliminary showing that a false statement
> knowingly and intentionally, or with reckless disregard for the truth, was included
> by the affiant in a search warrant affidavit, and if the allegedly false statement is
> necessary to the finding of probable cause, the Fourth Amendment requires that a
> hearing be held at the defendant's request.

*Franks*, 438 U.S. at 155-56.  Thus, a defendant must satisfy a two-prong test to be entitled to a

*Franks* hearing.  First, the defendant must make a substantial showing that a false statement was

knowingly, intentionally, or recklessly included in the affidavit.  Second, the Court must find

that the statement was necessary to a finding of probable cause.

Discussing the circumstances necessitating an evidentiary hearing, the Court further

explained in *Franks*:

> There is, of course, a presumption of validity with respect to the affidavit supporting
> the search warrant.  To mandate an evidentiary hearing, the challenger's attack must
> be more than conclusory and must be supported by more than a mere desire to
> cross-examine.  There must be allegations of deliberate falsehood or of reckless
> disregard for the truth, and those allegations must be accompanied by an offer of
> proof. . . .  Finally, if these requirements are met, and if, when material that is the
> subject of the alleged falsity or reckless disregard is set to one side, there remains
> sufficient content in the warrant affidavit to support a finding of probable cause, no
> hearing is required.

*Id.* at 171-72.

Significantly, in *United States v. Avery*, 295 F.3d 1158 (10th Cir. 2002), the Tenth Circuit

expanded *Franks*, holding that "[t]he standards of deliberate falsehood and reckless disregard set

forth in Franks apply to material *omissions* as well as affirmative falsehoods."  *Id.* at 1162

(emphasis added).  The Court noted, however, that if the omitted information would not have

altered the judge's decision to authorize the search, the fruits of the challenged search need not

be suppressed.  *Id.*

### a.  Drug Trafficking Charge

Defendant contends that Detective Funes deliberately misrepresented two important facts

5

in his affidavit.  First, he takes issue with Detective Funes' statement that "Affiant searched law enforcement databases for Manual [sic] and located a previous charge for Trafficking a Controlled substance on May 5th, 2002."  Defendant maintains that a search of the "easily-accessible" Case Lookup feature on the New Mexico courts' website, the results of which he attached to his motion as Exhibit B, reveals that the charge was ultimately dismissed due to the prosecution's entry of a *nolle prosequi*.  Based on the Court's review of Exhibit B, it appears that there was in fact an entry of a *nolle prosequi* on January 24, 2003, for the reason that the Court had suppressed the evidence against Defendant.  [Doc. 32, Ex. B, at 2.]

Defendant submits that it is "inconceivable" that Detective Funes could have discovered the drug-trafficking charge without also discovering that the charge was ultimately dismissed by the prosecutor.  Moreover, according to Defendant, omission of the charge's ultimate disposition was a result of Detective Funes "actively trying to mislead" the judge who issued the search warrant.

Defendant does not dispute that he was, in fact, charged with drug-trafficking in 2002.  As such, Detective Funes statement to that effect is not false.  At most, then, the failure to articulate the disposition of the charge was an omission.  However, not all omissions necessitate the suppression of evidence or even a *Franks* hearing.  Instead, to trigger the right to a *Franks* hearing, a defendant must make a substantial showing that material omissions were intentionally or recklessly designed to mislead the judicial official evaluating the warrant and affidavit.  *See Avery*, 295 F.3d at 1166.

In the Court's view, the failure to articulate the ultimate disposition of Defendant's 2002 drug-trafficking charge was not a material omission; nor has Plaintiff made a substantial preliminary showing that it was intentionally or recklessly designed to mislead the judge who

authorized the search.  A State court district judge, if anyone, would certainly make a distinction between allegations of a "charge" and a "conviction."  Indeed, by informing the judge that Defendant had been "charged" with drug-trafficking seven years earlier, Detective Funes essentially implied that he was without knowledge that the charge resulted in conviction.  *United States v. Rowland*, 145 F.3d 1194, 1205 (10th Cir. 1998) (noting that an issuing judge may, in making the probable-cause determination, draw reasonable inferences from the material provided in the warrant application).  An implication that the charge did not result in a conviction was entirely accurate under the circumstances.  Furthermore, that Detective Funes may have neglected to research the specifics of the charge's disposition, or at least to include them in the affidavit, is not the equivalent of intentionally or recklessly misleading the issuing judge regarding Defendant's criminal history.  *See Franks*, 438 U.S. at 170 (a showing of "negligence in checking or recording the facts relevant to a probable-cause determination" does not necessitate a *Franks* hearing).

Finally, although evidence of the dismissal of the 2002 drug-trafficking charge would perhaps be marginally beneficial to Defendant,[1] the omission was not vital to the judge's

---

[1] To the extent that the dismissal of the 2002 drug-trafficking charge could be characterized as exculpatory evidence, a proposition of which the Court remains unconvinced, the Sixth Circuit's rationale in *Mays v. City of Dayton*, 134 F.3d 809 (6th Cir. 1998) is helpful.  There, the court underscored the unfair burden that requiring inclusion of all potentially exculpatory evidence would place on law enforcement officers applying for warrants. The court explained that "[t]o weave the *Brady* due process rationale into warrant application proceedings and to require that all potentially exculpatory evidence be included in an affidavit, places an extraordinary burden on law enforcement officers, compelling them to follow up and include in a warrant affidavit every hunch and detail of an investigation in the futile attempt to prove the negative proposition that no potentially exculpatory evidence had been excluded."  *Id.* at 815.  As such, any burden upon law enforcement to include exculpatory information in a supporting affidavit is minimal.  *See id.*  Here, Detective Funes satisfied this limited burden by reporting that Defendant had been "charged" with drug trafficking seven years earlier, even without relating the final disposition of the charge.

Furthermore, it is noteworthy that Defendant was not *acquitted* of the 2002 drug-trafficking charge. Because a dismissed drug-trafficking charge, after the suppression of evidence, may still be probative and indicate a connection to drugs, the omission is immaterial.

probable-cause determination.  As discussed below, *see infra* Part III.A.ii., a review of the affidavit shows that probable cause existed, even assuming inclusion of the charge's disposition, or, alternatively, assuming that there was no reference whatsoever to the 2002 drug-trafficking charge.

### b.  Registered Address for Blue Dodge Truck

Next, Defendant contends that Detective Funes' representation that, according to a law enforcement database, the subject blue Dodge truck was registered to "Manual [sic] Cordova, with a Corfield address," was an attempt to deliberately mislead the issuing judge into believing that the truck was registered to Defendant at 1409 Corfield SW, the address of the residence to be searched.  In reality, the truck was registered to Defendant at his previous address, 1411 Corfield SW.  Defendant argues that Detective Funes' omission of the numeric address to which the truck was registered was material, because it went to the issue of nexus between the activities observed at 3629 El Porvenir SW and the address of the residence to be searched.  According to Defendant, Detective Funes deliberately obscured the fact that the "target" vehicle was not registered to the same numeric address as the place to be searched in an attempt to mislead the judge into authorizing the search.

As with Detective Funes' statement concerning the drug-trafficking charge, this statement regarding the truck's registration was not false and can be characterized, at most, as an omission.  To be sure, Detective Funes' affidavit could have been more precise, indicating that the truck was registered to Manuel or Maria Cordova at a previous address, also on Corfield.  However, Defendant has not made a substantial preliminary showing that the unspecific reference to "a Corfield address," without including a numeric address, was a deliberate attempt to mislead or a statement made in reckless disregard of the truth, rather than the result of the

necessarily hasty gathering of information.  As the Court noted in *Franks*,

> [W]hen the Fourth Amendment demands a factual showing sufficient to comprise
> "probable cause," the obvious assumption is that there will be a truthful showing.
> This does not mean "truthful" in the sense that every fact recited in the warrant
> affidavit is necessarily correct, for probable cause may be found upon hearsay and
> upon information received from informants, as well as upon information within
> the affiant's own knowledge that sometimes must be gathered hastily.

*Franks*, 438 U.S. at 164-65.  It is plausible that Detective Funes quickly searched the law

enforcement records and noted that the truck was registered to Manuel Cordova on Corfield,

without noting the discrepancy in numeric addresses.  The Court is simply not satisfied that

Detective Funes made a deliberate attempt to mislead in this regard.

More importantly, while the failure to include the numeric address was unquestionably

an omission, it was not a material one.  After all, Defendant *did* have several vehicles registered

in his name at the 1409 Corfield SW address.  For example, both a 2004 Ford truck and a 2007

Nissan sedan were registered to Manuel or Maria Cordova of 1409 Corfield SW.  The blue

Dodge truck, on the other hand, was registered to the same Cordovas, but at 1411 Corfield SW.

Defendant admits in his motion that 1411 Corfield SW was his previous address, and that he had

neglected to change the registration for his blue Dodge truck to reflect his new address on

Corfield.  Even if the correct numeric address for the blue Dodge truck had been included in

Detective Funes' affidavit, it would have likely been apparent to the issuing judge, just as it may

have been to Detective Funes, that Defendant had merely failed to update the motor vehicle

records for his blue Dodge truck but nevertheless now occupied the residence at 1409 Corfield

SW.

Further, the blue Dodge truck did not, as Defendant would suggest, lack any nexus to

1409 Corfield outside of an implication that it was registered to Defendant at that address.

9

Instead, the affidavit indicates that at the time of the controlled drug transaction between the informant and "Ash," deputies followed the blue Dodge truck from 3629 El Porvenir SW to 1409 Corfield SW.  Thus, the discrepancy in numeric address between the blue Dodge truck's registration and the deputies' observations at the time of the controlled drug transaction would support a judge's inclination that Defendant had merely neglected to update the truck's registration after moving residences.  As such, even a "corrected" affidavit – reflecting that the blue Dodge truck was registered to Defendant at 1411 Corfield SW, rather than at 1409 Corfield SW – would not undercut, to any significant degree, Detective Funes' position that a search of 1409 Corfield would produce incriminating evidence.  Accordingly, the Court concludes that the omission of the numeric address to which the blue Dodge truck was registered is not material.

Finally, probable cause existed nonetheless, even assuming that the correct numeric address was included in the affidavit, or, alternatively, that no mention was made of the address to which the truck was registered.  *See infra* Part III.A.ii.

### ii.  Probable Cause

A search warrant must be based upon probable cause, which a reviewing court determines by examining the affidavit supporting the warrant.  *See United States v. Tisdale*, 248 F.3d 964, 970 (10th Cir. 2001).  The court determines the warrant's "sufficiency . . . by looking at the totality of the circumstances and simply ensuring 'that the magistrate had a substantial basis for concluding that probable cause existed.'"  *Id.* (quoting *Illinois v. Gates*, 462 U.S. 213, 238-39 (1983).  Probable cause exists "only when the supporting affidavit sets forth facts that would lead a prudent person to believe there is a fair probability that contraband or evidence of a crime will be found in a particular place."  *United States v. Basham*, 268 F.3d 1199, 1203 (10th Cir. 2001).  "The task of the issuing magistrate is simply to make a practical, common-sense

decision whether, given all the circumstances set forth in the affidavit . . . there is a fair

probability that contraband or evidence of a crime will be found in a particular place." *Gates*,

462 U.S. at 238.  Finally, a reviewing court should pay great deference to the magistrate's

determination of probable cause, and "should not invalidate . . . warrant[s] by interpreting

affidavit[s] in a hypertechnical, rather than commonsense, manner." *Id.* at 236.

      Here, commonsense dictates that the omissions at issue would not affect the judge's

determination of probable cause.  Even if Defendant had shown that the omissions were material

and intentionally or recklessly made, and the offending information was corrected, the affidavit

would remain sufficient to establish probable cause.  For example, the inclusion of more

complete information – that Defendant's 2002 drug-trafficking charge was dismissed by the

prosecutor after evidence was suppressed and that the blue Dodge truck was registered to

Defendant at *1411* Corfield SW – does not affect the propriety of the probable-cause

determination.  Furthermore, even without *any* information regarding Defendant's prior drug-

trafficking charge or the address to which the blue Dodge truck was registered," the affidavit

would, nevertheless, contain the following facts in support of probable cause: 1) that Detective

Funes observed a man driving a blue Dodge truck, which was registered to Manuel Cordova,

arrive at 3629 Porvenir SW during the course of a controlled drug transaction; 2) that Detective

Funes observed the man driving the blue Dodge truck give the recent occupant of the residence

some object in exchange for money, contemporaneously with the controlled drug transaction;  3)

that the informant who participated in the controlled drug transaction told Detective Funes that

the man in the blue Dodge truck had sold the heroin, which he ultimately purchased, to "Ash"

and that he was "Ash's dealer"; 4) that, at the time of the controlled drug transaction, deputies

observed the blue Dodge truck leave the place of the transaction and drive to a residence at 1409

Corfield SW; and 5) that, at the execution of a search warrant at 3629 Porvenir SW, Luis

Arzavalla identified "Manuel" as the person who drove the blue Dodge truck and as the person

who had sold heroin to himself and to "Ash" for four months.  Thus, the affidavit, stricken of the

allegedly offending statements altogether, is sufficient to establish probable cause that evidence

of criminal conduct could be found at 1409 Corfield SW, in the blue Dodge truck, and on the

person of Manuel Cordova.[2]

      For all of these reasons, the Court concludes that a *Franks* hearing is not necessary to

establish the validity of the affidavit supporting the search warrant.

      **B.  Reliability of the Confidential Informant**

      Next, Defendant contends that the affidavit in support of the search warrant failed to

provide sufficient information about the reliability of the confidential informant.  The Court

agrees with Defendant that statements regarding an informant's veracity and basis of knowledge

are often an important part of the totality of the circumstances that a judge must consider in

making a probable-cause determination.  On the other hand, however, where there is sufficient

independent corroboration of an informant's information, there is no need to establish his or her

veracity.  *United States v. Danhauer*, 229 F.3d 1002, 1006 (10th Cir. 2000).

      The Government submits that, here, the reliability of the informant was irrelevant to the

probable-cause determination.  To this end, the Government argues that the only statement by

the informant that had any bearing on the probable-cause determination was a statement that was

corroborated by Luis Arzavalla –  that is, that the person who drove the blue Dodge truck was

the person who supplied heroin to "Ash."  Indeed, the affidavit indicates that Mr. Arzavalla told

---

[2] Defendant includes in his motion to suppress discussion of the good-faith exception to the exclusionary rule.  However, because the Court concludes that the affidavit at issue establishes probable cause, it is unnecessary to reach the question of whether the good-faith exception applies.

deputies, who were executing a search warrant at 3629 El Porvenir SW, that "Manuel" drove the blue Dodge truck and sold heroin to Mr. Arzavalla and to his cousin, "Ash." The Court agrees that Mr. Arzavalla's statement to deputies corroborated the informant's allegations concerning Defendant.

Additionally, the informant's allegations were corroborated by the controlled drug transaction itself. This is so despite the fact that, here, it was the informant that initiated the controlled transaction. *See Avery*, 295 F.3d at 1169 n.10 (concluding that the controlled drug transaction, in which the informant participated, corroborated the informant's allegations). In *United States v. Artez*, 389 F.3d 1106 (10th Cir. 2004), the Tenth Circuit explained with approval the particular method by which law enforcement officers should proceed with a controlled purchase in order to assure the reliability of the information underlying the affidavit. Specifically,

> [t]he common formalities observed by police officers when conducting such controlled purchases are as follows:  the police search the informant . . . for money and contraband prior to the buy; give the informant money with which to purchase the narcotics; transport the informant to the suspect residence (or follow the informant to the residence); watch the informant enter the suspect residence, disappear while inside the suspect residence, and emerge from the suspect residence; search the informant upon existing the suspect residence; and receive the narcotics from the informant.

*Id.* at 1111-12.

Here, Detective Funes searched the informant before and after the controlled drug transaction, finding no drugs or contraband. He also observed the informant enter the residence at 3629 Porvenir SW and remain therein during the course of a secondary and contemporaneous transaction between a recent occupant of 3629 Porvenir and a man in a blue Dodge truck, which occurred in Detective Funes' view. The informant emerged from the residence approximately

five minutes after the secondary transaction and met Detective Funes, at which point he or she produced the recently-purchased heroin.  Detective Funes' affidavit squarely conforms with the Tenth Circuit's standard for conducting controlled purchases.  Under the circumstances, the controlled drug transaction itself corroborates the informant's allegations that "Ash" sold heroin, which he, in turn, purchased from the man driving the blue Dodge truck.

In sum, there was sufficient independent corroboration of the informant's allegations, through statements by Mr. Arzavalla and through the controlled drug transaction, to render unnecessary efforts at establishing the veracity of the informant within the affidavit.

### C.  Execution of the Search Warrant

Defendant argues that the execution of the search warrant at his residence was executed in an unreasonable manner.  More specifically, he contends that officers "gratuitous[ly] and needlessly" rammed his front door, violating the knock-and-announce requirement.  Presumably, Defendant's position is that the violation of the knock-and-announce rule somehow justifies the suppression of evidence against Defendant.  Yet the Supreme Court determined, in *Hudson v. Michigan,* 547 U.S. 586 (2006), that a violation of the knock-and-announce rule does not require the suppression of evidence found in a search.  *Id.* at 599.

In reaching this determination, the Supreme Court reasoned that the social costs of applying the exclusionary rule to knock-and-announce violations are considerable, that the incentive to commit such violations in the first place are minimal, and that extant deterrences against the violations are substantial.  *Id.*  Basically, the deterrence benefits of suppression do not outweigh the substantial social costs.  *Id.*  Furthermore, the Court noted that the illegal entry in *Hudson* was not the "but-for" cause of obtaining evidence; that is, the police would have executed the warrant regardless of the preliminary misstep in the manner of entry.  *Id.* at 592.

14

Here, too, the officers would have no doubt searched Defendant's residence, as the warrant gave them the right to do, regardless of whether they observed the knock-and-announce rule. Defendant's remedy for a knock-and-announce violation, if any, is in a civil forum. Such a violation, even if it did occur, does not justify suppression of the evidence at issue.

### D.  Stop of Defendant's Blue Dodge Truck

Defendant argues that the stop of his blue Dodge truck was unconstitutional because there was no reasonable suspicion of illegal activity and because the search warrant did not authorize the stop. The Government, however, maintains that the search warrant gave Detective Funes the authority to stop and to search the truck. The Court concludes that the stop was justified not only by the search warrant but also by reasonable suspicion of illegal activity and by *Michigan v. Summers,* 452 U.S. 692 (1981). Because Defendant does not seek suppression of any evidence discovered during a search of his truck, the Court must entertain only the lawfulness of the stop for purposes of Defendant's motion to suppress.

Initially, Defendant complains that the search warrant and affidavit failed to adequately identify the blue Dodge truck and that the warrant's authorization to search "any and all vehicles registered to person(s) living, staying, or occupying 1409 Corfield SW" was overbroad and, even so, did not apply to the blue Dodge truck. However, the Court concludes that the affidavit and search warrant *did* adequately identify the blue Dodge truck, by description and by license plate. The truck also qualifies as a vehicle registered to a person occupying 1409 Corfield SW.[3] More importantly, the truck was identified in the affidavit as one registered to the very person whom officers had probable cause to believe was engaged in criminal activity.

---

[3] While the truck was not registered to Manuel Cordova at 1409 Corfield, it *was* registered to Manuel Cordova, who was "occupying" 1409 Corfield. Because the language of the search warrant permitted the search of vehicles registered to those occupying 1409 Corfield SW, it authorized the search of the blue Dodge truck.

Even if the warrant's authority to search *other* vehicles registered to occupants of 1409 Corfield SW was without either probable cause or nexus to criminal activity, as Defendant argues, the same is not true of Defendant's blue Dodge truck.[4]  Again, the affidavit indicates that Detective Funes observed a male arrive in a blue Dodge truck during the course of a controlled drug transaction and thereafter enter into a secondary and contemporaneous exchange of money for some object.  Both the informant and Mr. Arzavalla identified the driver of the blue Dodge truck, "Manuel," as a dealer of heroin.  Finally, registration records confirmed that the blue Dodge truck was, in fact, registered to a person named Manuel.  The warrant to search Defendant's blue Dodge truck was issued with both probable cause and nexus to criminal activity.

Moreover, even if the warrant had not authorized the stop of Defendant's truck, the truck was lawfully stopped based on the officers' reasonable suspicion that Defendant was engaged in criminal activity.  Generally speaking, for reasonable suspicion to justify the stop there must be, given the totality of the circumstances, a particularized and objective basis for suspecting that the person stopped is, or is about to be, engaged in criminal activity.  *United States v. Cortez*, 449 U.S. 411 (1981).  Considering the totality of the circumstances, Detective Funes and the other officers executing the search warrant had reasonable suspicion to believe that Defendant had been and was, once again, engaged in criminal activity.  Likewise, there was also reasonable suspicion to believe that the truck itself contained evidence of a crime.   At the time of the stop,

---

[4] Additionally, the search of vehicles located within the curtilage of search premises is generally permissible so long as there is some reasonable indicia that the vehicle or trailer was controlled by the owner or occupier of the premises.  *See, e.g., United States v. Gottschalk*, 915 F.2d 1459, 1461 (10th Cir. 1990) (noting that "[a] search warrant authorizing a search of certain premises generally includes any vehicles located within its curtilage if the objects of the search might be located therein); *United States v. Sturmoski*, 971 F.2d 452, 458 (10th Cir. 1992) (upholding the search of a horse trailer, a "vehicle" that was not identified in the search warrant, where there was reasonable indicia of control over it by the premises owner).

Defendant's blue Dodge truck, the very same vehicle that was linked to the drug transaction at 3629 Porvenir SW, was being driven away from the place to be searched, just as the deputies arrived to execute the search warrant.  The officers could have reasonably feared that Defendant was attempting to conceal or destroy evidence of narcotics sales.  As such, the stop of this truck, even absent the commission of a traffic violation, was justified by the reasonable suspicion that Defendant was engaged in criminal activity and that the truck contained evidence of such activity.

Finally, under *Summers*, officers are permitted to detain a person attempting to leave the premises subject to a search warrant.  *Id.* at 705.  For instance, in *Summers*, it was permissible for officers to detain a person who was "descending the front steps" of the search premises.  *Id.* Courts have extended *Summers* to permit the detention of persons who have departed the search premises in a vehicle, so long as the detention occurs shortly after their departure.  *See, e.g., United States v. Cochran*, 939 F.2d 337, 339 (6th Cir. 1991).  One rationale behind the *Summers* rule is to prevent an occupant of the search premises from fleeing, in the event that incriminating evidence is found.  *Id.* at 702.  Another rationale is the interest in minimizing the risk of harm to the officers by occupants of the premises, particularly because "the execution of a warrant to search for narcotics is the kind of transaction that may give rise to sudden violence or frantic efforts to conceal or destroy evidence."  *Id.*  Both justifications for the *Summers* rule were served by the seizure of Defendant's truck.  Additionally, the Government indicates, and Defendant does not dispute, that Defendant's blue Dodge truck was stopped as it was departing the residence at 1409 Corfield SW, again just as officers arrived to execute the search.  Accordingly, the stop of the truck was permissible under *Summers*.

17

### E.  Search of Defendant's Person

Finally, Defendant argues that the search of his pants' pocket was unlawful because there was no basis for the "warrantless search of his person."  Although the warrant clearly authorizes the search of "Manuel Cordova," Defendant's position is that the search was nevertheless rendered "warrantless" because of the alleged deficiencies in the warrant.  These alleged deficiencies include material misrepresentations, lack of sufficient indicia of the confidential informant's reliability, lack of nexus between the search premises and activity observed at 3629 El Porvenir, and lack of particularity with respect to the vehicles to be searched.

The Court, having already passed upon the alleged deficiencies, and having reasoned that the warrant was valid and supportive of the searches and seizure at issue, concludes that the search of Defendant's person, performed pursuant to the warrant, did not violate the Fourth Amendment.  Rather, the warrant's authorization to search Defendant's person was fully supported by probable cause to believe that Defendant had engaged in, or was engaging in, the sale of heroin.

## IV.  CONCLUSION

For all of these reasons, the Court concludes that Defendant is not entitled to a *Franks* hearing and that there is no basis otherwise for the suppression of evidence obtained in connection with the search of Defendant's residence at 1409 Corfield SW, the stop of his blue Dodge truck, or the search of his pants' pocket.

**IT IS THEREFORE ORDERED** that Defendant Manuel Cordova's Motion to Suppress is hereby **denied**.

_____
SENIOR UNITED STATES DISTRICT JUDGE